UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| P&M SERVICES, INC., | ) | CIVIL ACTION NO. 04-40173-FDS |
| Plaintiff | ) | (BBO #633929) |
| | ) | |
| v. | ) | |
| | ) | |
| ANDRE LAVALLEE, | ) | |
| Defendant | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

A. **Lavallee's Rule 12 Motion To Dismiss
Should Not Be Converted to A Rule
56 Motion For Summary Judgment**

Plaintiff P&M Services, Inc.'s ("P&M") has made much of defendant Andre Lavallee's ("Lavallee") submission of an Affidavit in support of his Rule 12(b)(6) Motion to Dismiss. According to P&M, this converts Lavallee's motion to dismiss into a Rule 56 motion for summary judgment.[1] But Lavallee provided the declaration to offset the (perhaps deliberate) omission of critical allegations from P&M's Complaint. Lavallee was, at all times relevant to the allegations in the Complaint, an employee of L&P Converters Corp. ("L&P"). This undisputed fact disposes of P&M's claim. Tellingly, P&M offers no explanation for its omission of this critical fact from its Complaint. P&M's plea to convert Lavallee's motion to one for summary judgment because of his introduction of a fact that P&M deliberately concealed should be rejected by the Court.

---

[1] P&M has also taken issue with Lavallee's submission of a letter exchanged between counsel for the parties. This letter was provided for background purposes only and plays no role in the merits of Lavallee's motion.

{J:\CLIENTS\lit\300487\0003\00482888.DOC;1}    1

B. **Conversion Of Lavallee's Motion
to One For Summary Judgment
<u>Will Not Change The Outcome</u>**

Even if the Court chooses to convert this motion to a Rule 56 motion for summary judgment, the outcome will be the same. The record on Lavallee's status as an employee acting within the scope of his employment is fully developed - no further discovery is necessary. P&M provided only a small portion of Lavallee's deposition testimony from the Florida lawsuit. Other excerpts should be considered as well. They are attached hereto as <u>Exhibit A</u>. A small sample of his testimony is reproduced below. It eliminates all doubt that Lavallee was, at all times, acting within the scope of his employment:

> Q. Give me – well, let me start it this way. Your employer is, currently, L&P Converters, Inc.?
> A. Yes.
> Q. How long have you been employed by L&P Converters?
> A. Fifteen years.
>
> \* \* \*
>
> Q. Who was your immediate supervisor?
> A. Martin Gubb.

(See <u>Exhibit A</u>, p. 9, ll. 6-24.)

> Q. Have you done any design of electrical machinery, electrical systems?
> A. Consulted on them.
> Q. With whom have you consulted?
> A. Company electrician.
> Q. At L&P, as part of your job?
> A. Yes.
>
> \* \* \*
>
> Q. Have you at any time taken photographs of equipment that is located at other locations that are involved in the paper industry?
> A. Yes.

Q. What photographs have you taken of equipment at other locations?
A. Well, about three-quarters of the machinery that's in the plant now I purchased, and I have taken pictures of every one of them.
Q. Okay. Have you taken pictures of equipment in other locations that has not been purchased?
A. At times.
Q. Have you taken pictures of any equipment that is mobile in nature?
A. Yes.
Q. What equipment have you taken pictures of that is mobile in nature?
A. A saw.
Q. And when were those pictures taken?
A. I believe it was April of 1998.

(See Exhibit A, p. 21, ln 12 - p. 22, ln. 20.)

Q. How is it that you went down to Eastern Graphics to take these photographs?
A. My employer asked me to go down.
Q. And what did Mr. Gubb tell you?
A. He said that they had a saw that they were demonstrating. Well they were – not demonstrating, I shouldn't say – cutting rolls of paper with, at this particular location. I am not sure of the name. And he asked me to go down and look at it.
Q. Did he tell you why?
A. To see if it was similar to what were working on.
Q. And at that point, what were you working on?
A. A device similar to that.

(See Exhibit A, p. 33, ll. 3-18.)

Q. Has Mr. Gubb, at any time since, sent you out to do any other photo surveillance?
                    * * *
A. To do surveillance?
Q. (By Mr. Gorman) Sure. Mr. Gubb send you out to do – take photographs of other equipment around?
A. All kinds.

(See Exhibit A, page 71, lines 17-24.)

>   Q. Did you take your car or the company car?
>   A. Company car.

(See Exhibit A, page 73, lines 20-22.)

From the foregoing passages and those additional passages attached at Exhibit A, it is plain that Mr. Lavallee acted at all times at the direction of his supervisor, Mr. Martin Gubb. Everything he did was on behalf of L&P. Nothing in the record contradicts this conclusion. Thus, P&M's tenuous argument that Lavallee acted outside the scope of his employment finds no support in the record.

C.  **P&M Misunderstands *Manville* and The Other Law Lavallee Relied On in His Opening Brief**

In his opening brief, Lavallee relied on *Manville Sales Corp. v. Paramount Systems*, 917 F.2d 544, Fed. Cir. 1990, a Federal Circuit opinion holding that an employee cannot be held personally liable for his employer's patent infringement, even where the employee's conduct would constitute infringement in the absence of the employment relationship. Incredibly, P&M describes this case as "a discredited decision of the U.S. Court of Appeals for the Federal Circuit." Nothing could be further from the truth. On at least three occasions, the Federal Circuit has approved and relied on the same principles enunciated in *Manville* that Lavallee relies on. See *AL-Site Corp. v. V.S.I. International, Inc.*, 174 F.3d. 1308, 1331 (Fed. Cir. 1999); *Hoover Group, Inc. v. Custom Metal Craft, Inc.*, 84 F.3d 1408, 1411 (Fed. Cir. 1996) and *Yeu v. S.T. Kim*, 1991 WL142608*3 (Fed. Cir. 1991). A simple Key Cite check on Westlaw reveals that *Manville* has never been reversed or overruled. In fact, it has been cited with approval on a multitude of occasions. See Exhibit B, Westlaw Key Cite printout.

Continuing its attack on *Manville*, P&M cites to *A. Stucki Co. v. Schwam*, 634 F. Supp. 259 (E.D. Penn.), *modified on other grounds*, 638 F. Supp. 1257 (E.D. Penn. 1986) and *Symbol Technologies, Inc. v. Metrologic Instruments, Inc.*, 771 F. SUPP. 1390 (Dist. N.J. 1991). *Schwam* was decided before *Manville* and is thus totally irrelevant. *Symbol Technologies* (like *Schwam*) is a district court opinion and not binding precedent.

Further, *Symbol Technologies* has nothing to do with ordinary employees such as Lavallee. In that case, the individual defendant was the sole owner and president of the defendant corporation. He also served as one of only three members of its board of directors. The fact that *Symbol Technologies* is limited to corporate officers is made crystal clear in the portion of the opinion criticizing *Manville*. There, the *Symbol Technologies'* court stated: "[t]he *Manville* court provides no reason for departing from the generally settled law concerning holding **officers of corporations** liable for patent infringement." *Symbol Technologies*, 771 F. SUPP. at 1403. Thus, *Symbol Technologies* has no bearing on Lavallee - he has no ownership interest in L&P, no control over L&P and derives no personal benefit from its allegedly infringing activities. See Lavallee's opening brief, Exhibit A.

As for the other cases Lavallee relied on, they were squarely on point with the issue presented here - each unequivocally stated that an employee could not be held personally liable for his employer's acts of infringement.[2] P&M's only rebuttal was that these cases were "old." Lavallee views these cases as well settled and undisturbed. The fact that no lawyer has signed

---

[2] *Art Metal Works, Inc. v. Henry Letterer & Bro., Inc., et al.*, 36 F.2d 267 (S.D.N.Y. 1929); *Cazier v. Mackie-Lovejoy Manufacturing Co., et al.*, 138 F. 654 (7th Cir. 1905); and *United Nickle Co. v. Worthington*, 13 F. 392 (D. Mass. 1882)

pleadings alleging patent infringement against a mere employee for over seven decades should cause P&M to reflect on the merits of its case, not give rise to criticism.

### D. P&M Has Failed To Allege A Cause Of Action For Inducing Patent Infringement

P&M completely misunderstood Lavallee's argument regarding P&M's claim for inducing patent infringement. Under *Manville*, P&M must allege that Lavallee's conduct induced infringement **and** that Lavallee knew or should have known that his actions would induce actual infringement. *Manville,* at 553. But there are no facts alleged in P&M's Complaint that support the conclusion that Lavallee knew of the existence of P&M's patents or that his conduct would induce infringement of those patents. These are essential elements of P&M's cause of action, yet they are nowhere to be found in P&M's Complaint. Thus, even if the allegations in P&M's Complaint are taken as true, they do not support a cause of action for inducing infringement. *Id.* Thus, P&M's count for inducing patent infringement fails to state a claim upon which relief may be granted and should be dismissed.

### CONCLUSION

Whether decided under Rule 12 or Rule 56, P&M's Complaint against Lavallee must be dismissed. He was merely an employee acting within the scope of his employment. To find that he is a proper defendant in a lawsuit for patent infringement would turn the law on its head and subject every line worker at every manufacturing facility to the risk of patent infringement litigation when the products they helped to build are accused of infringement. For all of the foregoing reasons, Lavallee's motion to dismiss should be granted.

ANDRE LAVALLEE
By his attorneys,

*/s/ James P. Hoban/*

James P. Hoban (BBO #633929)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

*/s/ Seth E. Rodack/*

Seth E. Rodack (#P55738)
Brooks Kushman, P.C.
1000 Town Center
Twenty-Second Floor
Southfield, MI 48075-1238
(248) 358-4400

Date:   October 29, 2004